## DECLARATION OF DR. MARINA WEHLER IN SUPPORT OF

## MALIKIE'S EX PARTE APPLICATION PURSUANT TO 28 U.S.C. § 1782

I, Dr. Marina Wehler, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an attorney-at-law admitted to practice in Germany. I am a Partner with the law firm of Arnold Ruess and represent Malikie Innovations, Ltd. and Key Patent Innovations, Ltd. (collectively "Malikie") in its/their patent infringement actions against Xiaomi Corporation and a number of its affiliates (collectively "Xiaomi") in Germany.

2. I have personal knowledge of the facts set forth herein, unless stated otherwise, and I make this declaration in support of Malikie's *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings.

3. I have extensive experience with the procedural rules, including discovery rules, in the courts of Germany. I make this declaration based on my personal knowledge, legal and factual research I have conducted or that was conducted under my supervision.

4. On July 21, 2025, Malikie Innovations, Ltd. filed two patent infringement lawsuits against Xiaomi in the Munich I District Court (Landgericht München I), asserting infringement of European Patents EP 2 606 690 B1 and EP 2 879 321 B1, respectively (collectively "the German Proceedings").

5. The patents asserted in these proceedings (the "Asserted Patents") are essential, have been disclosed, or are deemed disclosed, as essential or potentially essential to the 4G and/or 5G telecommunication standards. The Asserted Patents are part of a portfolio of standard-essential patents (SEPs) that was originally developed and held by BlackBerry Ltd. ("BlackBerry"). Following agreements entered into between 2023-2025, the portfolio is now split between Malikie and BlackBerry, with Malikie having the exclusive right to license the BlackBerry part as well with respect to certain companies, including Xiaomi. The Asserted Patents were assigned to Malikie by

BlackBerry. Prior to filing the above lawsuits, Malikie has offered Xiaomi a license to the Asserted Patents under fair, reasonable and non-discriminatory (FRAND) terms.

6.  When evaluating the issue of FRAND, German courts often consider the terms of "comparable licenses" entered by the patent proprietor with other implementers. I understand that BlackBerry and Teletry – a third party previously entrusted by BlackBerry with sublicensing the portfolio and, thus, the Asserted Patents – concluded a number of patent licensing agreements with competitors of Xiaomi before Malike acquired a part of the portfolio and was granted the right to license the other part (the "Requested Agreements"). Malikie intends to rely on some or all of these agreements in the German Proceedings to help establish that its own licensing offers are FRAND.

7.  I understand that Malikie has learned some information about the Requested Agreements in its due diligence leading up to the acquisition of the BlackBerry portfolio. However, I understand that Malikie's information may not be complete and may, in particular, not accurately identify the contracting parties, execution dates etc. of all the Requested Agreements. I further understand that Malikie has asked BlackBerry for copies of the Requested Agreements, but as a result of confidentiality restrictions, BlackBerry indicated that it is not permitted to share copies of these agreements with Malikie. However, BlackBerry further explained the confidentiality provisions generally permit disclosure of the agreements pursuant a court order or subpoena, provided that there is a protective order (or its equivalent, such as a confidentiality club) to protect the confidentiality of the agreements. Against this background, Malikie intends to use the information from its due diligence to seek an order from the Munich District Court for the production of those Requested Agreements it can identify against BlackBerry Ltd., which is neither a plaintiff nor a defendant in the German Proceedings. However, Malikie may not be able to identify all of the Requested Agreements with the level of specificity required by the German courts.

8.  The concept of US pre-trial discovery from parties or third parties does not exist in German law (*Greger*, in: Zöller, ZPO, 35th ed. 2024, section 142, para. 2; *Althammer*, in Stein/Jonas, Kommentar zur Zivilprozessordnung, 23rd ed. 2016, section 142, para. 9; *Schönknecht*, in

GRURInt 2011, 1000 [1004]). Options of discovery in Germany are thus more limited than under section 1782 discovery in the United States. Section 142 para. 1 of the German Code of Civil Procedure (*Zivilprozessordnung* – *"ZPO"*) provides that a party may request that the court order an opposing party or third party to produce only specific documents that are known to exist and are specifically identified (German Federal Court of Justice, decision of May 27, 2014, case no. XI ZR 264/13, paras. 25 and 28; *Greger*, in: Zöller, ZPO, 35th ed. 2024, section 142, para. 6I). The requesting party must also justify the request by explaining how each specific document requested will be used to support a claim or defense in the lawsuit (German Federal Court of Justice, decision of June 26, 2007, case no. XI ZR 277/05, para. 20). The requesting party must therefore already have specific knowledge of both the document's existence and its content. Under section 142 ZPO, it is not sufficient to request categories or groups of documents (German Federal Court of Justice, decision of May 27, 2014, case no. XI ZR 264/13, para. 28; *Stadler*, in: Musielak/Voit, ZPO, 20th ed. 2023, section 142 para. 4a).

9. Even if a third party is ordered to produce a specifically identified document, the German courts likely have no effective mechanism to enforce such an order. Although German law generally provides for financial penalties if a third party refuses to comply with a production order (*cf.* section 142 para. 2 and section 390 ZPO), it is rather unlikely that such a penalty order could be successfully enforced upon a third party residing outside of Germany or the European Union (in this regard, *cf.* Federal Court of Justice, decision of March 25, 2010, case no. I ZB 116/08, paras. 9 et seq. regarding enforcement of a penalty order in another EU Member State). I am not aware of any case in which a penalty against a foreign third party for not complying with a document production order was ordered, let alone enforced.

10. Therefore, it appears rather unlikely that Malikie will be able to obtain (all of) the Requested Documents from BlackBerry under the limited German discovery options.

11. However, German courts are receptive to evidence obtained through foreign discovery procedures, in particular under section 1782, even though German law does not itself provide

such procedures (*Dombrowski*, in: GRUR-Prax 2017, 272; *Schönknecht*, in GRURInt 2011, 1000 [1004]). No provision under German law generally prohibits the use of evidence obtained via foreign discovery procedures (*Dombrowski*, in: GRUR-Prax 2017, 272 et seq.). In one of the most important treatises on German patent law, former Judge of the Düsseldorf Court of Appeal, Thomas Kühnen, even discusses section 1782 discovery as an important tool for clarification of facts (*Kühnen*, Handbuch der Patentverletzung, 16th edition 2024, Chapter B, para. 213, the German original wording reads: *"Ein wichtiges Aufklärungsinstrument bietet 28 USC § 1782"*). Section 1782 discovery therefore is in line with and does not circumvent German law.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of July, 2025, in Düsseldorf, Germany.

_____
Dr. Marina Wehler